IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 07-cv-00865-BNB-CBS

GREG LECHMAN,

Plaintiff,

v.

EAST CHERRY CREEK VALLEY WATER & SANITATION DISTRICT,

Defendant.

## ORDER

This matter is before me on **Defendant's Combined Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56 and Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1)** [Doc. #26] (the "Motion") and **Defendant's Brief in Support of Combined Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56 and Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1)** [Doc. #27] (the "Brief"), both filed 1/31/08. The Motion is GRANTED insofar as it seeks summary judgment in favor of the defendant on the plaintiff's age discrimination claim (Claim One) and DENIED AS MOOT insofar as it seeks summary judgment on the remaining state law claims. The remaining state law claims (Claims Two, Three, and Four) are DISMISSED WITHOUT PREJUDICE.

### I. STANDARD OF REVIEW

In ruling on a motion for summary judgment, the facts must be viewed in the light most favorable to the party opposing the motion, and that party must be afforded the benefit of all reasonable inferences to be drawn from the evidence. Adickes v. S. H. Kress & Co., 398 U.S.

144, 157 (1970). Rule 56(c), Fed.R.Civ.P., provides that summary judgment may be rendered if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of demonstrating by reference to portions of pleadings, depositions, answers to interrogatories and admissions on file, and affidavits the absence of genuine issues of material fact. Celotex Corp. v. Catrett, 447 U.S. 317, 323 (1986). The party opposing the motion is then required to go beyond the pleadings and designate evidence of specific facts showing that there is a genuine issue for trial. Id. at 324. Only admissible evidence may be considered when ruling on a motion for summary judgment. World of Sleep, Inc. v. La-Z-Boy Chair Co., 756 F.2d 1467, 1474 (10th Cir. 1985).

## II. UNDISPUTED MATERIAL FACTS

1. The plaintiff is a resident of the State of Colorado. *Complaint*, ¶ 2.

2. The defendant, East Cherry Creek Valley Water & Sanitation District (the "District"), is a public entity and special district, established under Title 32 of the Colorado Revised Statutes. *Brief*, p. 3, ¶ 1.

3. Dave Kaunisto has been the District's Manager since 1997. *Brief*, p. 3, ¶ 1 and Ex. A-13, 6:22-7:6. Mr. Kaunisto is the final authority on personnel decisions and the only District official who can terminate employees. *Brief*, p. 3, ¶ 1 and A-13, 8:24-9:2.

4. Monica Holland was hired as the District's Business Manager in 1999 and became the Assistant District Manager in 2003. *Brief*, p. 3, ¶ 2 and Ex. A-12, 5:10-6:13. Her duties include supervising the managers of the various departments. *Brief*, p. 3, ¶ 2 and Ex. A-12, 6:14-21.

5. Randy DeBlieck was hired by the District as a water operator in 1982. *Brief*, p. 3, ¶ 3 and Ex. A-11, 5:25-6:5. Mr. DeBlieck became the Operations Manager in the late 1980s. *Brief*, p. 3, ¶ 3 and Ex. A-11, 6:19-7:2.

6. The plaintiff was hired by the District as an operator on August 5, 2002. *Brief*, p. 4, ¶ 5 and Ex. A-16, 26:8-10, 47:2-4.

7. In 2004, the new position of Utilities Manager was created. Mr. Deblieck and an outside candidate, Kipp Scott, were among those interviewed. Mr. Scott was selected and started on January 3, 2005. *Brief*, p. 7, ¶ 14; Ex. A-13, 14:25-15:18; and Ex. A-17, 24:2-6.

8. When Mr. Scott was hired, Mr. DeBlieck was given a raise and a new title of Central Field Manager. He reported to Mr. Scott and no longer supervised the operators. *Brief*, p. 8, ¶ 15 and Ex. A-11, 47:14-50:11, 52:16-53:4.

9. On August 31, 2006, the Utilities Department had a routine morning staff meeting. The plaintiff attended the meeting along with employees Lehmann, Bowman, Smith, Marshall, Tower, and Scott. *Brief*, p. 12, ¶ 25 and Ex. A-16, 173:13-20; 178:6-11. During the meeting, Mr. Scott solicited suggestions from the operators regarding a "wish list" for the 2007 budget. The plaintiff suggested automating a pump. *Brief*, p. 12, ¶ 25 and Ex. A-16, 179:2-180:24. A discussion ensued between the plaintiff and Mr. Scott regarding the pump.

10. Immediately after the meeting, the plaintiff went to Mr. Kaunisto's office and told him there had been an exchange with Mr. Scott about the water transfer pump. He also "said something to the effect that . . . Mr. Scott walked over to me and was a little bit--a little mad, sorry." The plaintiff told Mr. Kaunisto that he believed Mr. Scott was upset and that Mr. Scott had told him, "You think you're pretty smart, don't you, Mr. Lechman?" The plaintiff also told Mr. Kaunisto, "I don't know what the problem is"; "I'm going back to work"; and "If you need any--need to talk about it, just give me a call." *Brief*, pp. 13-14, ¶ 28 and Ex. A-16, 221:22-224:1. The plaintiff did not provide any specifics regarding what transpired at the meeting. Ex. A-13, 79:1-6; 85:25-86:4.

11. Later that morning, Mr. Scott went to Mr. Kaunisto to discuss the meeting. He told Mr. Kaunisto that there had been a verbal confrontation at the meeting and that "Mr. Lechman called him stupid and said he didn't know what he was talking about." *Brief*, p. 14, ¶ 29 and Ex. A-13, 77:10-78:11.

12. Based on his discussions with the plaintiff and Mr. Scott, Mr. Kaunisto believed that the plaintiff "had crossed the line of professionalism by reacting in the way that was described" by Mr. Scott. Id. at Ex. A-13, 78:16-25.

13. Mr. Kaunisto then met with Mr. Scott and Ms. Holland. They decided to talk with an attorney from the Mountain States Employers Counsel. At that time, Mr. Kaunisto had not decided to fire the plaintiff. *Brief*, p. 14, ¶¶ 29-30 and Ex. A-13, 79:7-25; Ex. A-12, 87:13-91:22.

14. After speaking with an attorney from the Mountain States Employers Counsel, it was determined that Ms. Holland should interview two individuals from the meeting. Ms.

4

Holland interviewed Messrs. Tower and Smith. She does not remember why she chose to interview those two in particular. She did not interview Mr. DeBlieck because he was not present at the meeting. She did not interview the plaintiff because he already had spoken to Mr. Kaunisto. Mr. Scott was not involved in the interviews, and he was not involved in the decision regarding who would be interviewed. *Brief*, p. 14, ¶ 30 and Ex. A-12, 89:12-94:22.

15. Ms. Holland prepared a summary of her interviews with Messrs. Tower and Smith, which she gave to Mr. Kaunisto. A second meeting was held between Messrs. Kaunisto and Scott and Ms. Holland. They discussed Ms. Holland's investigation and an appropriate disciplinary action for the plaintiff. Mr. Scott and Ms. Holland recommended that the plaintiff be terminated. *Brief*, p. 17, ¶¶ 36-37; Ex. A-13, 85:3-20, 86:9-89:21; Ex. A-20.

16. Ms. Holland's memo, as provided to Mr. Kaunisto,[1] states in pertinent part:

> Scott Smith indicated that Kipp [Scott] was discussing how to run the system, specifically the Zone 1 tanks and the PRV as some issues had come up from the night before when Greg [Lechman] had been on call. Kipp stated that an operator could run the system on determining the tank levels with the new controls that were in place. But Scott [Smith] said that it was his experience that this could not be run on auto, they had to be run in hand or manually.
>
> Greg's response was that if Kipp was as smart as he thought he was, he should go on call for a week to see how it really is in the field. He indicated that Kipp becomes defensive when operators question his direction on running the water system and sometimes yells at them.

---

[1] The record contains two other versions of the memo: one with the summary of Mr. Smith's statements crossed out and one with the summary of Mr. Tower's statements crossed out. *Brief*, Ex. A-9 and Ex. A-10. Mr. Kaunisto testified that these versions contained crossed out portions because Smith and Tower were later asked to sign the portions that contained their own summaries for submission to the Equal Employment Opportunity Commission. *Brief*, Ex. A-13, 88:19-89:16.

> The confrontation between Greg and Kipp became escalated further, but when I asked Scott if Greg called Kipp stupid, he indicated that he did not recall.
>
> I asked Scott if he had ever witnessed this type of confrontations [sic] between Greg and Kipp in the past. Scott said that he recalled another occasion involving uniforms. Greg was not happy with the choices he had been given for uniforms and wanted to pick out his own. In fact, he indicated that he liked the type of shirts that Randy DeBlieck, Central Well Field Manager, had and asked if he could have those types of shirts.
>
> Scott said that Kipp micro-manages the Operator On Call (OOC) and this individual can no longer make any decisions. He advised that this was not like it had been in the past.
>
> Scott felt Greg had been backed into a corner and this was Greg's way of dealing with it.
>
> I then spoke to Mike Tower about what had transpired during the morning Field Staff meeting.
>
> Mike indicated that Kipp was trying to explain the system and trying to make a point when Greg's behavior became "out of line". Greg told Kipp that he had never been on call so he didn't know what he was talking about.
>
> Mike also said that Greg has had a "piss poor" attitude and thinks he is "important." He relayed an incident that took place when Mike and Maurice were in the garage getting things ready for the H2'06 celebration. Greg questioned why they were cutting wood in the garage as his pickup was getting sawdust all over it. Mike told him that he didn't have to explain to him what he was doing.
>
> Mike indicates that Greg's outburst was not appropriate and was also degrading to Kipp. When asked if any disciplinary actions should be taken, he said yes.

*Brief*, Ex. A-20.

17. Messrs. Kaunisto and Scott and Ms. Holland met again the following day. *Brief*, p. 17, ¶¶ 38; Ex. A-13, 86:9-20. Mr. Kaunisto made the decision to terminate the plaintiff's

6

employment because he, Mr. Scott, and Ms. Holland did not believe that a suspension would result in a change in the plaintiff's attitude. *Brief*, p. 17, ¶¶ 37-38; Ex. A-13, 86:15-25.

18. Although some past incidents involving the plaintiff and customer service complaints, a vehicle, and uniforms were factors that played a part in Mr. Kaunisto's decision to fire the plaintiff, the August 31 meeting and Mr. Scott's recommendation to fire him were the major factors in Mr. Kaunisto's decision. *Brief*, p. 17, ¶ 38 and Ex. A-13, 87:17-88:12.

19. Of the operators that were employed at the time the plaintiff was hired, Mr. Bowman left on September 6, 2006; Mr. Smith resigned in March 2007; Mr. DeBlieck accepted a buyout in April 2007; Mr. Marshal transferred to Customer Service in July 2007; and Mr. Tower remains in his position with the District. *Brief*, p. 18, ¶¶ 40-42. Mr. Bowman was born in 1969; Mr. Smith was born in 1970; Mr. DeBlieck was born in 1945; Mr. Marshall was born in 1965; and Mr. Tower was born in 1944. *Brief*, p. 8, ¶ 16.

### III. ANALYSIS

#### A. ADEA Claim

It is unlawful for an employer to discharge an individual because of the individual's age. 29 U.S.C. § 623(a)(1). Where, as here, there is an absence of direct evidence of age discrimination, a plaintiff may establish age discrimination through the three-stage burden shifting analysis set forth in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802-04 (1973). <u>Cone v. Longmont United Hosp. Ass'n</u>, 14 F.3d 526, 529 (10th Cir. 1994). The plaintiff bears the initial burden of proving a prima facie case of discrimination. <u>Id.</u> If that burden is met, the burden shifts to the employer to establish a legitimate, nondiscriminatory reason for its conduct.

Id. If the employer meets its burden, the plaintiff must then prove that the employer's reasons for its conduct are pretext for intentional discrimination. Id.

A prima facie case of age-based discriminatory discharge requires a showing that the plaintiff was (1) in the protected age group; (2) performing satisfactorily; (3) discharged; and (4) his position was filled by a younger person. Id. The defendant concedes that the plaintiff has established a prima facie case of age discrimination. *Brief*, p. 21; *Plaintiff's Brief in Opposition to Defendant's Combined Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56 and Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1)* [Doc. #29] (the "Response"), p. 6, ¶ 9; *Defendant's Reply Brief in Support of Combined Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56 and Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1)* [Doc. #30] (the "Reply"), p. 3, ¶ 9.

The burden now shifts to the defendant to establish a legitimate, nondiscriminatory reason for its actions. The defendant asserts that the primary reason for the plaintiff's discharge was that Mr. Kaunisto believed that the plaintiff had exhibited inappropriate conduct at the meeting on August 31, 2006. *Brief*, pp. 2, 21. The plaintiff concedes that the defendant has met its burden to establish a legitimate, non-discriminatory reason for firing him. *Response*, p. 7.

The burden shifts back to the plaintiff to show that the defendant's proffered reason was pretext for age discrimination. "Pretext can be shown by such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." Morgan v. Hilti, 108 F.3d 1319, 1323 (10th Cir. 1997) (internal quotations and citations omitted).

The plaintiff asserts pretext based on the following: (1) the plaintiff "was doing an excellent job fulfilling his job duties"; (2) "none of the other employees present at the August 31, 2006 meeting believed his conduct warranted termination"; (3) the determinations of Messrs. Scott and Kaunisto and Ms. Holland that the plaintiff acted inappropriately were subjective and based on misrepresentations by Mr. Scott; (4) the defendant justified its decision to fire the plaintiff based on prior behavior issues that were either minor, resolved, or occurred years before plaintiff was fired; (5) the defendant conducted an inappropriate inquiry into the events of the August 31 meeting; (6) Mr. Scott made ageist comments about the plaintiff during the course of the plaintiff's employment; and (7) the only two employees fired after Mr. Scott was hired were over the age of 55. *Response*, p. 8.

### 1. Job Performance

The plaintiff asserts that the defendant's "discriminatory motive for firing Plaintiff is established by the undisputed fact that Plaintiff was doing an excellent job fulfilling his job duties . . . ." *Response*, p. 8. The defendant does not contend that the plaintiff's job performance was the basis for its decision to fire him. Therefore, a reasonable factfinder could not conclude that evidence of the plaintiff's excellent work performance demonstrates pretext for age discrimination.

### 2. Opinions of Other Employees

The plaintiff asserts that the defendant's discriminatory motive for firing him is established by the fact that none of the other employees present at the August 31 meeting "believed his conduct warranted termination." Id. In determining whether the defendant's proffered reason for firing the plaintiff was pretextual, however, "[t]he relevant inquiry is not

9

whether the employer's proffered reasons were wise, fair or correct, but whether it honestly believed those reasons and acted in good faith upon those beliefs." Rivera v. City and County of Denver, 365 F.3d 912, 924-25 (10th Cir. 2004) (internal quotations omitted). To accomplish this inquiry, the facts are examined "as they appear[ed] to the person making the decision." Id. at 925.

It is undisputed that Mr. Kaunisto is the final authority on personnel decisions and is the only District official who can terminate employees. Thus, the issue here is whether the evidence of plaintiff's behavior as presented to Mr. Kaunisto was "so weak that a rational fact finder could infer that [Mr. Kaunisto's] expressed reason for terminating Plaintiff must have been pretextual." Id. at 925. The issue is *not* whether a reasonable factfinder--after hearing the opinions of all of the employees present at the meeting--would agree with or approve of Mr. Kaunisto's decision.

There is no evidence that the employees' opinions were known to Mr. Kaunisto at the time he made his decision. To the contrary, the record shows that the only employee opinion Mr. Kaunisto had before him was contained in the memo from Ms. Holland, which reported that Mr. Tower responded affirmatively when asked whether any disciplinary action should be taken against the plaintiff for his behavior at the meeting. A reasonable factfinder could not conclude that the opinions of other employees in attendance at the meeting, gathered more than a year after the incident and for purposes of this litigation, render Mr. Kaunisto's reasons for firing the plaintiff unworthy of belief and vulnerable to an inference of age discrimination. See Ainsworth v. Independent School Dist. No. 3 of Tulsa, County, Okla., 232 Fed.Appx. 765, 773-74 (10th Cir. 2007) (stating that inconsistencies in students' recollections of an incident, provided nearly four

10

years after the incident, were "not germaine to the pretext analysis because the students did not make the decision").

### 3. Subjectiveness of the Decision Makers

The plaintiff states that the defendant's determination that he acted inappropriately at the August 31 meeting was unreasonable because it was based on misrepresentations by Mr. Scott which were designed to ensure the plaintiff's termination. However, examining the facts as they appeared to Mr. Kaunisto, the plaintiff provides no evidence, and I can find none in the record, to show that Mr. Kaunisto knew, should have known, or even suspected that Mr. Scott misrepresented the events of the meeting. To the contrary, Mr. Kaunisto testified that he believed Mr. Scott's version of the events at the August 31 meeting. *Motion*, Ex. A-13, 78:23-25.

The plaintiff also asserts that "[p]retext lies in the subjective determinations of Mr. Scott, Dave Kaunisto, and Monica Holland that Plaintiff acted 'inappropriately' at the August 31, 2006 meeting." *Response*, p. 8.

The use of wholly subjective evaluations in making termination decisions is viewed by the courts with skepticism. Plotke v. White, 405 F.3d 1092, 1106 (10th Cir. 2005). The plaintiff's assertions here of subjective decision making are not supported by the record, however. The record shows that Mr. Kaunisto determined that an investigation was necessary prior to making a decision about disciplining the plaintiff. *Brief*, Ex. A-13, 78:16-81:23. Ms. Holland conducted the investigation, and Mr. Kaunisto considered the information gathered from the investigation, specifically the statements of Mr. Smith and Mr. Tower, prior to making any decision to fire the plaintiff. Id. at 89:22-95:6.

Mr. Kaunisto stated:

> From my view, the purpose of the investigation was to confirm that Mr. Scott had not done anything to provoke the unprofessional behavior. Most of the decision was based on what Mr. Scott reported from the meeting, and nothing in the investigation indicated he acted inappropriately.

Id. at 95:1-6.

In the interview, Messrs. Smith and Tower stated that "Greg's response was that if Kipp [Scott] was as smart as he thought he was, he should go on call for a week to see how it really is in the field"; "[t]he confrontation between Greg and Kipp became escalated further"; "Greg told Kipp that he had never been on call so he didn't know what he was talking about"; and "Mike indicates that Greg's outburst was not appropriate and was also degrading to Kipp." The record further shows that the plaintiff talked to Mr. Kaunisto immediately after the meeting.

The plaintiff has not set forth any evidence to show that Mr. Kaunisto's decision was based on wholly "subjective" criteria which would give rise to an inference of pretext for age discrimination.

### 4. Reliance on Prior Behavior Issues

The plaintiff asserts that the defendant relied on the plaintiff's prior behavioral issues in its decision to fire him and that reliance on those issues demonstrates pretext because they either were minor, were resolved, or occurred years before plaintiff was fired. *Response*, pp. 8-15. Specifically, the plaintiff states:

> Defendant claims that a single past customer service complaint and Plaintiff's questions about the District's vehicle and uniform policies were factors in its decision to fire him. Defendant also vaguely mentions Plaintiff's "attitude toward management in the past" and an issue with Plaintiff's self-evaluation form. However, the evidence reveals that these reasons are not legitimate because

13

> the issues occurred years before the Plaintiff was fired, were resolved at the time they occurred, or were so minor they didn't warrant a reprimand. Defendant's proffered reasons make clear that Plaintiff's supervisor, Kipp Scott, was determined to fire Plaintiff, and suggest that Defendant is grasping for *post hoc* justifications for firing plaintiff.

*Response*, p. 9.

The plaintiff attempts to explain and justify each of these behavioral issues. The relevant inquiry here, however, involves a determination of the facts before Mr. Kaunisto at the time he made his decision to fire the plaintiff; whether he honestly believed the asserted facts; and whether he acted in good faith based upon that belief. Rivera, 365 F.3d at 924-25.

Mr. Kaunisto testified that, prior to the plaintiff's termination, Mr. Scott had discussed with him issues or problems concerning the plaintiff. *Brief*, Ex. A-13, 32:3-6. First, Mr. Scott reported that he had given the plaintiff a verbal reprimand in early 2005 because the plaintiff acted inappropriately upon learning that a new pickup truck had been assigned to another employee. Mr. Kaunisto felt that Scott had taken the appropriate action. Id. at 32:8-33:16. Second, Scott made Mr. Kaunisto aware that the plaintiff had exhibited a lack of respect for district policy and management when he objected to new uniforms. Id. at 41:2-42:15. Third, Mr. Scott reported that the plaintiff needed to fill out his self-evaluation form as a part of his performance evaluation. Id. at 43:2-44:14. Mr. Kaunisto further testified that he was aware that in October 2004, the plaintiff had been reprimanded after receiving a customer service complaint from Mr. Cowperthwaite and the Cunningham Fire Department. Id. at 64:23-65:10.

The plaintiff does not deny that Mr. Scott informed Mr. Kaunisto that the plaintiff was verbally reprimanded in early 2005 regarding the pickup truck incident; that Mr. Scott made Mr. Kaunisto aware that the plaintiff had exhibited a lack of respect for district policy and

14

management when the plaintiff objected to new uniforms; that Mr. Scott reported that the plaintiff needed to fill out his self-evaluation form as a part of his performance evaluation; or that the plaintiff had been reprimanded after receiving a customer service complaint. Nor does the plaintiff provide any argument or evidence indicating that Mr. Kaunisto was aware of or relied on any contrary of conflicting facts concerning the behavioral issues.

Importantly, Mr. Kaunisto testified that although he considered all of these issues when making his decision, the plaintiff's behavior at the August 31 meeting was the major factor in his termination decision. Id. at 87:17-24. Therefore, the gist of plaintiff's argument--that defendant is "grasping for *post hoc* justifications for firing Plaintiff," *Response*, p. 9--is not supported by the record.

The plaintiff has failed to show that the defendant relied on inconsequential behavioral issues in its decision to fire him, and no reasonable jury could infer pretext on this basis.

### 5. Inappropriate Investigation

The plaintiff asserts that Messrs. Scott, Tower, and Smith all gave differing accounts of what happened at the August 31 meeting and that Ms. Holland's failure to interview additional employees "suggests pretext." The plaintiff further asserts that "[h]ad Ms. Holland talked to all of the participants at the meeting, she would have concluded that Mr. Scott misrepresented the events of the meeting and exaggerated his claims that Plaintiff was 'obnoxious, rude and flippant.'" *Response*, p. 18.

"An employer's failures to follow written or unwritten policy [when investigating allegations of misconduct] may support a showing of pretext, particularly if other similarly-situated employees were treated differently." Ainsworth, 232 Fed.Appx. at 774 (citing Campbell

v. Gambro Healthcare, Inc., 478 F.3d 1282, 1291 (10th Cir. 2007) (internal quotations omitted). In Ainsworth, the court found that a plaintiff failed to show pretext on allegations of an inadequate investigation because the plaintiff did not provide evidence that the employer had a policy concerning investigations and because the plaintiff did not provide evidence that similarly-situated employees were treated differently than he. Id. The court therefore concluded that whether the employer should have conducted a more extensive investigation "is a matter of business judgment that we will not revisit." Id.

Similarly in this case the plaintiff has failed to provide any evidence that the District failed to follow any established policy in conducting its investigation or that any similarly-situated employees were treated differently than he. Moreover, although their accounts of the events differ, Messrs. Scott, Tower, and Smith all provided descriptions of the meeting which contained statements of insubordination by the plaintiff. Because the pretext analysis does not focus on what actually occurred at the meeting, but instead focuses on what Mr. Kaunisto reasonably believed occurred, no reasonable juror could find that Mr. Kaunisto's reliance on the statements of these three employees, rather than obtaining statements from all employees present at the meeting, was pretext for age discrimination.

### 6. Ageist Comments

The plaintiff asserts that Mr. Scott made a number of "ageist comments" which created "a backdrop of age discrimination." *Response*, pp. 18-20. Age-related comments which refer directly to an employee may support an inference of age discrimination. Cone, 14 F.3d at 531. In order to support an inference of age discrimination, a plaintiff must demonstrate that a nexus exists between the allegedly discriminatory statements and the employer's decision to terminate

him. Id. "Isolated comments, unrelated to the challenged action, are insufficient to show discriminatory animus in termination decisions." Id.

The plaintiff does not provide any evidence that Mr. Kaunisto either was aware of or had any reason to be aware of the alleged ageist comments. To the contrary, the plaintiff concedes that he did not report the comments to anyone, and he was not threatened or offended by the remarks at the time they were made. *Brief*, Ex. A-16, 114:1-14, 116:25-120:12, 128:1-129:-16, 176:19-177:20.

The plaintiff has failed to demonstrate that a nexus exists between the alleged ageist statements and Mr. Kaunisto's decision to terminate him and has therefore failed to support an inference of age discrimination.

### 7. Statistics

The plaintiff asserts that the defendant's termination of another older employee creates "a backdrop of age discrimination." *Response*, p. 18. The plaintiff states that Mr. DeBlieck, the plaintiff's former supervisor, was constructively discharged after Mr. Scott told him he had to take call duties for an indefinite period of time, and that DeBlieck and another employee believe DeBlieck was forced out of his job because of his age. Id. at pp. 19-20.

"[S]tatistical data showing an employer's pattern of conduct toward a protected class can create an inference that an employer discriminated against individual members of the class." Cone, 14 F.3d at 532. However, the statistical data must be based on a comparative analysis of similarly situated individuals. Id. "A plaintiff's statistical evidence must focus on eliminating nondiscriminatory explanations for the disparate treatment by showing disparate treatment between comparable individuals." Id. (internal quotations and emphasis omitted).

17

The plaintiff's statistical data is grossly insufficient. There is no evidence that Mr. DeBlieck was similarly situated to the plaintiff, *i.e.*, that he had a similar job position or had "similar job performances without differentiating or mitigating circumstances." See id. To the contrary, DeBlieck had a different job title and was not previously taking call. Moreover, Mr. DeBlieck is the only employee the plaintiff uses in his comparison. There is no data regarding the other employees, and hence no data to show a pattern of age discrimination by the District. The lack of trustworthiness of the plaintiff's statistical argument is made evident by the undisputed fact that Mr. Tower is older than the plaintiff and remains in his position at the District.

The plaintiff has failed to produce statistical data sufficient for a reasonable jury to infer that the defendant's proffered reason for firing the plaintiff is pretext for age discrimination.

In summary, the plaintiff has failed to create a material fact dispute regarding whether the defendant's proffered reason for terminating his employment constitutes pretext for age discrimination. Accordingly, the defendant's Motion is GRANTED insofar as it seeks summary judgment on the plaintiff's ADEA claim (Claim One).

**B.   Remaining State Law Claims**

As a preliminary matter, I note that the plaintiff asserts jurisdiction pursuant to 28 U.S.C. § 1332(a), diversity of jurisdiction. *Complaint*, ¶ 6. However, it is undisputed that the plaintiff is a citizen of Colorado and that the defendant is an entity created under Colorado state law. Therefore, diversity jurisdiction does not exist.

Section 1331, 28 U.S.C., provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United

18

States." Because the Complaint asserts an age discrimination claim under 29 U.S.C. § 621 *et seq.*, the basis for this Court's jurisdiction over the plaintiff's Complaint is 28 U.S.C. § 1331, federal question jurisdiction.

The plaintiff's remaining claims are state law claims for breach of contract (Claim Two), promissory estoppel (Claim Three), and negligent supervision and retention (Claim Four). A federal court may decline to exercise supplemental jurisdiction over the plaintiff's state claims when it has "dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Because I find that the defendants are entitled to summary judgment on the plaintiff's ADEA claim, I decline to exercise supplemental jurisdiction over the remaining state law claims. Those claims are DISMISSED WITHOUT PREJUDICE.

## IV. CONCLUSION

IT IS ORDERED that the Motion is GRANTED insofar as it seeks summary judgment in favor of the defendants on the plaintiff's ADEA claim (Claim One) and DENIED AS MOOT insofar as it seeks summary judgment on the remaining state law claims.

IT IS FURTHER ORDERED that the state law claims (Claims Two, Three, and Four) are DISMISSED WITHOUT PREJUDICE.

IT IS FURTHER ORDERED that the defendant may have its costs upon filing a bill of costs within ten days after the entry of this order. D.C.COLO.LCivR 54.1.

Dated June 17, 2008.

BY THE COURT:

 s/ Boyd N. Boland
United States Magistrate Judge